```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                     DALLAS DIVISION

ESTATE OF MARIE A. MERKEL,     §
MATTHEW R. POLLARD,            §
Independent Executor,          §
                               §
               Plaintiff,      §
                               § Civil Action No. 3:06-CV-1891-D
VS.                            §
                               §
UNITED STATES OF AMERICA and   §
RUPERT M. POLLARD,             §
                               §
               Defendants.     §
```

## MEMORANDUM OPINION AND ORDER

This case—essentially an offshoot of protracted divorce litigation—is a quiet title action brought by plaintiff Estate of Marie A. Merkel (the "Estate") against defendants the United States of America (the "government") and Rupert M. Pollard ("Pollard"). Pollard counterclaims. The Estate filed suit because the government has imposed tax liens on real property—the "Beverly House"—that the Estate maintains it owns, and that it contends are the result of the tax liabilities of Pollard, whom the Estate contends has no property interest in the Beverly House. To resolve the pending cross-motions for summary judgment, the principal question the court must decide is whether Pollard has a property interest in the Beverly House. Concluding that he does, the court denies the Estate's motion and grants in part Pollard's motion.

I

Insofar as pertinent to the present motions, many of the critical facts are undisputed. In 1992 Marie A. Merkel ("Merkel"), now deceased, sought a divorce from Pollard. Pollard vacated the Beverly House at around that time. In 1996 the state court hearing the divorce case entered a final decree of divorce ("First Decree") and divided the community property. *See Pollard v. Merkel,* 1999 WL 72209, at *1 (Tex. App. Feb. 12, 1999, no pet.) (not designated for publication). Pollard appealed, and the court of appeals reversed, holding, *inter alia,* that the trial court had erroneously relied on a mediated settlement agreement between the parties. *See id.*

On remand, the case was tried to a jury, and in May 2001 the trial court entered another divorce decree ("Second Decree"), again dividing the community property. Shortly before the Second Decree was entered, Pollard deeded to Merkel his interest in the Beverly House. Pollard appealed the Second Decree and obtained another reversal, this time based on the trial court's failure to disqualify one of Merkel's attorneys. *See Pollard v. Merkel,* 114 S.W.3d 695, 703 (Tex. App. 2003, pet. denied) ("*Pollard II*"). Before the litigation could proceed on remand, Merkel died.

In the present case, the Estate sues the government—who has filed multiple liens against the Beverly House based on Pollard's tax liabilities—and Pollard under 28 U.S.C. §§ 2201(a) and 2410(a)

to quiet title.[1]  The Estate contends that Pollard has no interest in the Beverly House because he and Merkel were legally divorced, and because Pollard deeded his interest in the property to Merkel. Pollard counterclaims for a declaratory judgment that he and Merkel were in fact married at the time of her death, that the deed is invalid, and that, as Merkel's surviving spouse, he owns a one-half community property interest in the Beverly House.  Pollard also alleges that he is entitled to homestead rights in the property. The government, although recognizing that the validity of its tax liens depends on whether Pollard in fact has an interest in the Beverly House, does not take either side's position in their dispute.[2]

---

[1] 28 U.S.C. § 2410(a)(1):

> Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter——(1) to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien.

[2] Resolution of the Estate's and Pollard's motions has been delayed by the government's litigation posture.  During the pendency of the cross-motions, the government disclaimed its interest in the Beverly House.  It later withdrew the disclaimer, citing newly discovered tax liens based on *Merkel's* unpaid taxes. Because the government's interest no longer appeared to depend on *Pollard's* having an interest in the property, the court ordered the parties to demonstrate why the dispute between Merkel and Pollard should be litigated in federal court.  *See Estate of Merkel v. Pollard,* 3:06-CV-1891-D (N.D. Tex. May 1, 2008) (Fitzwater, C.J.) (order).  Through subsequent briefing, the government has clarified

II

The Estate maintains that the appeal and subsequent reversal of the First Decree applied only to the division of marital property and did not affect the parties' marital status. It argues that Merkel and Pollard were divorced as of the date the First Decree was entered in 1996. The court disagrees.

"It is well settled in this State that the division of a marital estate is not a claim severable from the rest of a divorce proceeding." *Dawson-Austin v. Austin,* 968 S.W.2d 319, 324 (Tex. 1998). In reaching this conclusion, the Texas Supreme Court cited *Vautrain v. Vautrain,* 646 S.W.2d 309 (Tex. App. 1983, writ dism'd), which involved the same question raised here. *See Dawson-Austin,* 968 S.W.2d at 324. In *Vautrain* the trial court—after having already entered a judgment of divorce—granted a partial new trial on the division of marital property. *See Vautrain,* 646 S.W.2d at 310. In doing so, it held that the earlier judgment of divorce was still final, and refused to consider any community property that was acquired after the judgment was entered. *Id.* at 311. The court of appeals reversed, holding that the parties were not legally divorced because the divorce decree could never have become final without a disposition of the property issues. *Id.* at 316.

---

that it also asserts an interest based on tax assessments *against Pollard*. Because neither Pollard nor the Estate objects to the government's current litigation position, the concerns expressed in the court's order have been satisfied, and the court may now address the merits of the case. *See id.*

It explained that "[t]he issue of divorce is not severable from the issue of property division," and that the "portion of a divorce suit regarding property rights between the parties is a part of the very divorce suit itself." *Id.* at 314 (emphasis removed). "The trial court may . . . separate some of the issues and grant a partial new trial on certain property issues, but if it does so, . . . the order granting the divorce . . . is interlocutory and not final." *Id.* at 315. Accordingly, because the trial court in that case had granted a partial new trial on the division of marital property, its judgment of divorce "was not final and [the parties] therefore could not [have been] legally divorced." *Id.* at 316.

These principles were applied in another case with similarities to this one. *See Garrison v. Tex. Commerce Banks,* 560 S.W.2d 451 (Tex. Civ. App. 1977, writ ref'd n.r.e.). *Garrison* involved a probate dispute between Barnett Garrison ("Barnett") and the Estate of Candace Garrison ("Candace"), of whom Barnett claimed to be a surviving spouse. *Id.* at 452. Relying on an order of divorce that was entered before Candace died, the probate court dismissed Barnett's claim against the Estate. *See id.* at 452. The court of civil appeals reversed, holding that, because the marital property had not yet been divided at the time of Candace's death, the divorce was never final and the parties were not divorced. *Id.* at 457. It explained that a "cause of action for divorce terminates on the death of either spouse prior to the rendition of

a judgment," and that such a judgment could never be final until "all issues" in the case have been disposed of (including the division of marital property). *Id.* at 453-54; *see also Whatley v. Bacon,* 649 S.W.2d 297, 299 (Tex. 1983) ("Death of a party abates a divorce action and its incidental inquiries of property rights and child custody."). It therefore concluded that Barnett had an interest in Candace's estate as her surviving spouse. *Id.* at 457.

It is therefore clear that Merkel and Pollard were not legally divorced at the time of Merkel's death, because the marital property had not yet been divided.

III

The Estate argues next that Pollard deeded his interest in the Beverly House to Merkel. Pollard responds that he did this solely by reason of the Second Decree, which had not yet been reversed on appeal. He maintains that he is entitled to restitution of the deed.

The Restatement of Restitution provides that "[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final[.]" Restatement (First) of Restitution § 74 (1937). "The Restatement's rule on restitution following reversal is supported by long-standing [Texas and] United States Supreme

Court precedent." *Miga v. Jensen,* 214 S.W.3d 81, 88 (Tex. App. 2006, pet. granted) ("*Miga II*") (collecting cases).

The deed that Pollard executed effectively states, on its face, that its purpose is to comply with the Second Decree. *See* P. App. 126-29 (special warranty deed) (describing the "[c]onsideration" for the Beverly House transfer as "[t]he division of property in [the divorce action] . . . entered in the 256[th] District Court of Dallas County, Texas"). The record does not indicate another reason for Pollard to transfer his interest in the Beverly House.

The Estate nevertheless opposes restitution on two grounds. First, it maintains that Pollard obtained various items of personal property as part of the property division. The proper remedy for this, however, is the restitution of the personal property to the rightful owner, not the abrogation of all restitution rights. *See* Restatement (First) of Restitution § 74; *Miga II,* 214 S.W.3d at 88.

Second, the Estate argues that Pollard transferred his interest in the Beverly House without a written court order that required that he do so. This fact is not controlling. "[A]s long as a judgment that is subsequently reversed is paid by the defeated party, the judgment does not have to be paid under some form of judicial compulsion for the party to be entitled to repayment."

*Id.* at 89.[3]

For the foregoing reasons, the court concludes that Pollard is entitled to restitution of the deed he executed to the Beverly House in response to the Second Decree.

IV

In view of the court's ruling, it can no longer be disputed that Pollard has a one-half community property interest in the Beverly House. *See, e.g., United States v. Stapf,* 375 U.S. 118, 128 (1963) ("Under a community property system, such as that in Texas, the spouse receives outright ownership of one-half of the community property and only the other one-half is included in the decedent's estate."). There is dispute, however, over whether Pollard still has homestead rights in the Beverly House after having vacated the property.

A

In Texas, "each spouse in a marriage [has] a separate and undivided possessory interest in the homestead [i.e., the Beverly House]." *E.g., United States v. Rodgers,* 461 U.S. 677, 685 (1983).

---

[3]Texas law recognizes that, if a judgment debtor voluntarily pays an adverse judgment without being under *any* form of duress (e.g., the obligation to pay interest on judgment debt), and in a way that would cause the opposing party to believe that the controversy is over, the controversy becomes moot and the debtor waives his right *to appeal*. See *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002). There is no suggestion, however, that such a voluntary payment could also waive *restitution* rights where, as here, the debtor has successfully exercised a right to appeal (indicating that the case was not moot). *Cf. Pollard II,* 114 S.W.3d at 703 (Pollard's successful appeal of Second Decree).

"A surviving spouse retains the right to use and occupy the homestead so long as he or she elects to do so . . . even if the decedent has willed the property to another." *Ferguson v. Ferguson,* 111 S.W.3d 589, 597-98 (Tex. App. 2003, pet. denied) (citing Tex. Const. art. XVI, § 52; Tex. Prob. Code Ann. § 283 (Vernon 1980)). A person may waive his homestead right by abandoning it. *Id.* at 598. "Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead." *Womack v. Redden,* 846 S.W.2d 5, 7 (Tex. App. 1992, writ denied). "Abandonment is an affirmative defense." *McFarland v. Rousseau,* 667 S.W.2d 929, 931 (Tex. App. 1984, no writ). The "one asserting waiver must plead it and prove it by affirmative evidence." *Ferguson,* 111 S.W.3d at 598.

B

The Estate asserts that Pollard abandoned the homestead when he moved out of the Beverly House in 1992. It did not raise this defense in its answer to Pollard's amended counterclaim, but it has filed a motion for leave to amend its pleadings and do so.

Under the court's scheduling order, the deadline for filing a motion for leave to amend pleadings expired May 8, 2007. When the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must first determine whether to modify the scheduling order under the Fed. R. Civ. P. 16(b)(4) good

cause standard. *See S & W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); see *S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). Applying these factors, the court grants the Estate's motion for leave to amend.

First, because Pollard did not assert his counterclaim until after the deadline for seeking leave to amend pleadings had expired (having obtained leave to do so), it would have been impossible for the Estate, prior to that deadline, to have sought leave to amend its pleadings to raise an affirmative defense to that counterclaim. Second, the amendment is important to the case because, without it, the Estate will be unable to challenge Pollard's assertion of

cause standard. *See S & W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); see *S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). Applying these factors, the court grants the Estate's motion for leave to amend.

First, because Pollard did not assert his counterclaim until after the deadline for seeking leave to amend pleadings had expired (having obtained leave to do so), it would have been impossible for the Estate, prior to that deadline, to have sought leave to amend its pleadings to raise an affirmative defense to that counterclaim. Second, the amendment is important to the case because, without it, the Estate will be unable to challenge Pollard's assertion of

homestead rights. Third, no unfair prejudice would result from the amendment. The Estate raised the abandonment defense in its summary judgment motion, and Pollard has had ample opportunity to respond. Pollard does not identify any unfair prejudice that would result from granting the Estate's motion for leave, and he argues instead that such a showing is not necessary. Although Pollard is correct that prejudice is not an absolute requirement, the absence of such prejudice certainly weighs in favor of granting leave. *See id.*

Accordingly, all applicable[4] factors in the Rule 16(b)(4) analysis favor granting leave to amend. And because the court discerns no compelling reason for denying such leave under the more liberal standard of Rule 15(a)(2), the motion for leave is granted.[5]

---

[4]Given the absence of prejudice, the court need not address the fourth factor: the availability of a continuance to cure such prejudice.

[5]In its motion for leave to amend, the Estate briefly argues that Pollard's amended answer and counterclaim is too vague to provide notice of any claim regarding the homestead interest. The Estate advances no persuasive argument in support of this challenge, however, and its position is undermined by its own summary judgment motion, which directly challenges the existence of Pollard's homestead interest and demonstrates clear notice of Pollard's claim. The court therefore declines to hold that Pollard's claim with respect to the homestead interest is foreclosed by the clarity of his pleadings.

C

The Estate supports its abandonment defense by alleging, *inter alia,* that Pollard has not resided at the Beverly House since 1992 and has not paid property taxes or other expenses on the Beverly House at least since Merkel died in 2004. It also maintains that Pollard registered his car in New Mexico and intended to reside there. Pollard maintains, on the other hand, that he always intended to return to the Beverly House, stressing the fact that he continued to list the Beverly House as his primary residence for voter registration purposes.

Because the Estate will have the burden of proof of establishing this affirmative defense at trial, it may only obtain summary judgment if it establishes "'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). The court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.). One of these elements is Pollard's intent to abandon the property. *Womack,* 846 S.W.2d at 7. Under the "heavy" "beyond peradventure" standard, the Estate has not met its burden of establishing that Pollard intended to abandon the homestead. The Estate has, however, adduced sufficient evidence to

raise a fact issue.  For this reason, Pollard's motion for summary judgment on the abandonment defense (or, more generally, on the existence of homestead rights) is also denied.

* * *

In sum, the court denies the Estate's December 21, 2007 motion for summary judgment.  The court grants Pollard's December 14, 2007 summary judgment motion with respect to his request for declaratory judgment that he owns a one-half community property interest in the Beverly House, but it denies the motion with respect to his request for declaratory judgment that he has a continuing homestead interest in the property.  Pollard's January 28, 2008 and February 5, 2008 motions to strike are denied as moot; Pollard's February 5, 2008 motion for leave to supplement his pleadings is granted; the Estate's March 6, 2008 motion for leave to file an amended answer is granted; the government's February 20, 2008 withdrawal of disclaimer is allowed, and the concerns of the court's May 1, 2008 order have been satisfied.

**SO ORDERED.**

July 29, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE